UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: VIRGINIA L. WORRELL | : : : : : : : | CIVIL ACTION NO. 3:10-cv-14 (JCH) (BK Case Nos. 08-21312; 08-2052)  JULY 30, 2010 |

**RULING RE: APPEAL FROM THE ORDER OF THE
BANKRUPTCY COURT (Doc. No. 1)**

## I.  INTRODUCTION

Pursuant to Federal Rule of Bankruptcy Procedure 8001 and section 158(a) of title 28 of the United States Code, plaintiff-appellant Dean Kelley ("Kelley") appeals to this court from the Judgment of the United States Bankruptcy Court dated November 10, 2009, overruling Kelley's objections to discharge and denying his request for a determination of dischargeability of debts of the defendant-appellee, Virginia Worrell ("Worrell").  See Notice of Appeal (Doc. No. 1).  For the reasons stated below, the bankruptcy court's Judgment is affirmed.

## II.  FACTUAL BACKGROUND[1]

Worrell, the debtor, is Kelley's mother.  Some time in 2006, they agreed to buy a house (hereinafter, "new home"), where both of them would live, along with Kelley's daughter.  In reliance on that agreement, Worrell sold the house in which she then lived, using some of the proceeds to purchase the new home in May of 2006.  The new

---

[1] The facts contained herein are taken largely from the Bankruptcy Court's November 10, 2009 Ruling.  See In re Worrell, 2009 WL 3768850 (Bankr. D. Conn. Nov. 10, 2009).

1

home was purchased in Worrell's name alone, and the mortgage Worrell took out on it was in the amount of $250,000. A few months later, a falling out ensued between Kelley and Worrell, and Kelley demanded that Worrell leave the new home.  Worrell vacated soon thereafter, but returned several weeks later, at which time she discovered that Kelley had changed the locks and that she was unable to gain entry.

In November 2006, Worrell refinanced the mortgage on the new home for $350,000, without Kelley's knowledge.  She then accepted $20,000 from Kelley, and transferred the home to him.  At around the same time, Worrell withdrew approximately $51,000 from a checking account that was in her name.  That checking account was allegedly being used by Kelley to hide money from a business called White Flames Systems.  Between the refinancing, her receipt of Kelley's payment for the new home, and the withdrawal from the checking account, Worrell accessed approximately $140,000.

Between 2006 and July 11, 2008, Worrell spent that $140,000 on food, rent, trips, and visits to a casino.  On July 11, 2008, Worrell filed a voluntary petition, pursuant to Chapter 7 of the Bankruptcy Code, on July 11, 2008.  Kelley filed an initial Complaint on September 30, 2008, and an Amended Complaint on May 29, 2009, seeking a determination of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A) and (B), and a denial of discharge under 11 U.S.C. §§ 727(a)(2)(A) and (B) , 727(a)(3), 727(a)(4)(A), and 727(a)(5).  After a hearing held on October 19, 2009, and the filing by both parties of post-trial briefs, the Bankruptcy Court issued a decision on November 19, 2009, overruling Kelley's objections to discharge and denying his request for a determination of dischargeability of Worrell's debts.

## III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C.A. § 158, this court has jurisdiction to hear appeals from final orders of the bankruptcy court. In this case, the bankruptcy court has issued a final Judgment on Kelley's Complaint. Therefore, appellate jurisdiction is present. The court reviews the bankruptcy court's conclusions of law de novo, and its findings of fact under a "clearly erroneous" standard. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d Cir. 1990).

## IV.    DISCUSSION

### A.    Factual issues

While it is far from clear,[2] the bulk of Kelley's arguments seem to be directed to the Bankruptcy Court's findings of fact. As stated above, this court must affirm such findings unless they are "clearly erroneous."[3] This standard is "a deferential one." Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 44 (2d Cir. 2000). A finding of fact is clearly erroneous " 'when although there is evidence to support it, the reviewing court is on the entire evidence left with the definite and firm conviction that a mistake has been

---

[2] The court has found its review of Kelley's submissions--including his briefs and exhibits-- to be difficult. Kelly's briefs lack any semblance of formatting or organization, use highly unusual and distracting stylistic devices, and fail to cite cases and exhibits in a consistent matter. Moreover, his exhibits are not labeled accurately–exhibit W, for example, which purports to be a trial transcript, is in fact a deposition transcript. The Bankruptcy Court, in its November 10, 2009 Ruling, noted similar difficulties. See In re Worrell, 2009 WL 3768850, at *1 n.2 ("The Plaintiff's pre-and post-trial presentations and trial conduct have scrambled the record of this proceeding to the brink of incoherence.").

[3] It bears nothing that, while Kelley's briefs recount his version of the facts, he does not appear to attempt to show why the Bankruptcy Court's determinations were clearly erroneous. Further, multiple arguments included in Kelley's briefs consist of little more than innuendo that is of dubious relevance to any issue that this court might properly consider on appeal. See, e.g., Appellate Brief at 12 (asserting that the Bankruptcy Court's decision "enables Worrell to poke fun at . . . Connecticut State Court proceedings; . . . [d]eclares that Worrell is above [b]usiness [l]aw, is above [c]ontract law, is immune from [c]ivil/[s]tatutory [t]heft [c]rimes, is above [b]ankruptcy filing requirements . . . .").

committed.' " Knickerbocker Toy Co., Inc. v. Azrak-Hamway Intern., Inc., 668 F.2d 699, 702 (2d Cir. 1982) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Importantly, "[t]he mere presence of evidence to support an inference contrary to that drawn by the trier of fact does not mean that the factual findings were clearly erroneous." Palazzo, 232 F.3d at 44.

Many of the holdings contained in the Bankruptcy Court's November 19, 2009 Ruling appear to have been based on the Bankruptcy Court's crediting Worrell's testimony at the October 19 hearing. To the extent that Kelley brings claims under 11 U.S.C. §§ 523(a)(2)(A) and (B), 11 U.S.C. §§ 727(a)(2)(A) and (B), and 727(a)(4)(A), the Bankruptcy Court accurately noted that Kelley would need to show that Worrell acted with "a wrongful or fraudulent intent," in order to prevail on such claims. 2009 WL 3768850, at *2 (quoting each of the above statutes). The Bankruptcy Court credited Worrell's testimony that she lacked such fraudulent intent. While Worrell "freely admitted accessing or taking the [$140,000]," the Bankruptcy Court found that she "testified credibly that she believed th[ose] Funds to be owed to her, that they were hers, or she was otherwise entitled to them, that she did not hide the money, and . . . sufficiently explained how she expended the money, at the Hearing and at her deposition." Id. ("Based upon the credible testimony of the Debtor, the Court determines that the Debtor did not act with the requisite fraudulent intent, or wrongfully take property of another."). Similarly, the Bankruptcy Court, apparently crediting Worrell's testimony, found both that Worrell did not conceal or fail to keep or preserve information, in violation of 11 U.S.C. § 727(a)(3), and that Worrell satisfactorily explained her loss of funds, pursuant to 11 U.S.C. § 727(a)(5). Because decisions as

4

to whose testimony to credit "are entirely within the province" of the Bankruptcy Court in this case,[4] the court declines to conclude that such findings as clearly erroneous. Palazzo, 232 F.3d at 44.

While Kelley's briefs cite evidence in support of his version of the facts,[5] such briefs fail to include any discussion of contradictory evidence in the record that supportive of the findings of the Bankruptcy Court.[6] For instance, Kelley points to several pieces of evidence indicating that "Worrell asserted falsely, [sic] that she had no safety deposit boxes." See Appellate Brief at 8. However, other evidence in the case-- which evidence Kelley does not address--indicates that Worrell did not conceal the fact that she had access to a safety deposit box. See Exh. V. at 29:21-23. Similarly, while Kelley alleges that Worrell "failed to disclose all her bank Accounts [sic] as required by law and the rules of this Court," Appellate Brief at 8, there is evidence in the record that Worrell did not conceal her access to the account that is apparently in dispute.[7] Exh V.

---

[4] The appellant's list of "Items to be Included in the Record of Appeal" states that Exhibit W is a transcript of the October 19, 2009 hearing before the Bankruptcy Court. In fact, Exhibit W contains a copy of Virginia Worrell's deposition, which was taken in January of 2009. The transcript from the October 19, 2009 hearing was transmitted to the district court, upon request of the undersigned, on July 27, 2010.

[5] It bears noting that some of Kelley's factual arguments are unsupported by the evidence cited. For example, Kelley asserts that "Worrell had a significant amount of cash and failed to disclose this in her July 11, 2008 Petition," citing Worrell's checking records. See Appellate Brief at 9 (citing Exh. M). Those records, however, do not warrant a conclusion that the Bankruptcy Court was clearly erroneous in finding that Worrell did not "conceal property or fail to keep records under Section 727(a)(3)" or fail to "satisfactorily explain[] the expenditure (loss) of funds under Section 727(a)(5)." In re Worrell, 2009 WL 3768850, at *2. The only 2008 documents from those records are checking statements from April, May, and June of 2008, which show that Worrell's balance as of April 23, 2008 was approximately $790, that she withdrew all but $27 of that money by May 22, 2008, and that she closed the account in June. Such facts are not enough of a basis for the court to determine that the bankruptcy court was clearly erroneous in finding that Worrell failed to disclose funds in her July 11, 2008 Petition.

[6] Kelley's appellate brief barely references the Bankruptcy Court's November 19, 2009 Ruling at all.

[7] Worrell describes that account (with Citizen's Bank) as one of "the accounts of the Conserved Persons for which the Debtor was Conservator of the Estate." Brief in Opposition at 6-7.

at 36-37. While the court agrees with Kelley that there is some evidence in the record to support his version of the facts, "[t]he mere presence of evidence to support an inference contrary to that drawn by the trier of fact does not mean that the factual findings were clearly erroneous." Palazzo, 232 F.3d at 44.

In sum, the court, having reviewed the record before it (including the transcript of the October 19, 2009 hearing), is not "left with the definite and firm conviction" that Worrell, in accessing and spending the $140,000, acted with a wrongful or fraudulent intent, concealed property or failed to keep applicable records as required by law, or did not satisfactorily explain her expenditure of such money. Knickerbocker Toy Co., 668 F.2d at 702. On this basis, the court concludes that the Bankruptcy Court's factual findings are not "clearly erroneous."

### B. Legal Issues

Kelley appears to argue that the Bankruptcy Court erred under principles of preclusion, because the Connecticut state courts have adjudged Worrell "to have embezzled, stolen, and fraudulently taken money which did not belong to her." Appellate Brief at 10. The question of preclusion is a legal one, and the court thus reviews it de novo.

Federal courts must "give the same preclusive effect to . . . state Court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Fayer v. Town of Middlebury, 258 F.3d 117, 124 (2d Cir. 2001) (internal quotation marks and citation omitted); see also 28 U.S.C.A. § 1738. In this case, a collateral estoppel (i.e., issue preclusion) analysis (rather than a claim preclusion analysis) is appropriate because, as the Second Circuit has held, "[w]here

6

the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." Evans v. Ottimo, 469 F.3d 278, 281 (2nd Cir.2006) (internal quotation marks and citation omitted). "In Connecticut, to be subject to collateral estoppel, an issue must have been: (1) fully and fairly litigated, (2) actually decided, . . . (3) necessary to the judgment in the first action, and (4) identical to the issue to be decided in the second action." Faraday v. Blanchette, 596 F. Supp. 2d 508, 515 (D. Conn. 2009) (internal quotation marks and citation omitted).

The court concludes that the Bankruptcy Court did not err in its determination that there is no basis for issue preclusion in this matter. Kelley asserts that, "Worrell has been found by a State of Connecticut Superior Court to have embezzled, stolen and fraudulently taken money which did not belong to her," citing what appears to be a 2007 state court complaint[8] against Worrell for breach of contract, conversion, and civil theft. See Appellate Brief at 10 (citing Exh. Q). Included with this state court complaint are documents entitled "Writ, Summons and Direction of Attachment," "Order on Prejudgment Remedy," and "Officer's Return to Court." Id.[9] While Kelley argues that the state court that apparently handled this matter made an "express finding" that Worrell, inter alia, embezzled and committed fraud, the Bankruptcy Court accurately noted that these documents contain no such "express finding." In re Worrell, 2009 WL

---

[8] While Exhibit Q purports to be a "certified copy," the exhibit itself does not include a seal or other mark indicating that it is, in fact, a certified copy.

[9] In addition, a document is included that states, inter alia, "Judgment enters after a hearing in damages in favor of the plaintiff as follows: Damages: $165,677.88; Costs: $352.00"

7

3768850, at *3. Indeed, besides the purported state complaint itself--which does not plead "fraud" or "embezzlement" factually or as a cause of action--there is no reference in any other document within Exhibit Q to any embezzlement or fraud committed by Worrell. In Connecticut, "[a]n issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." State v. Joyner, 255 Conn. 477, 490 (2001) (internal quotation marks and citation omitted). In this case, the court agrees with the Bankruptcy Court that the state court documents submitted by Kelley "shed no light on any element of Sections 523 (other than a monetary damage award) and/or 727, and have no preclusive effect." In re Worrell, 2009 WL 3768850, at *3.

    C.    <u>Record on Appeal</u>

Under Federal Rule of Appellate Procedure 11(a):

> An appellant filing a notice of appeal must comply with Rule 10(b) and must do whatever else is necessary to enable the clerk to assemble and forward the record. If there are multiple appeals from a judgment or order, the clerk must forward a single record.

Moreover, Federal Rule of Appellate Procedure 10(b) requires an appellant to either "order from the reporter a transcript of such parts of the proceedings not already on file as the appellant considers necessary" or to "file a certificate stating that no transcript will be ordered." In this case, it appears to the court that Kelley has not complied with the provisions of Rule 11 or Rule 10(b). While Kelley manually filed exhibits with this court, and electronically filed a list thereof (Doc. No. 11), the Bankruptcy Court never assembled the record and forwarded it to this court. The Bankruptcy Court also represented to this court that it either does not have access to, or is unaware of the

8

location of, the documents listed in Kelley's "items to be included in the record on appeal."

Notwithstanding Kelley's noncompliance with the aforementioned Rules, the court has decided this appeal based on the exhibits that Kelley manually filed, along with the transcript of the October 19, 2009 hearing, which the undersigned requested that the Bankruptcy Court transmit to this court on July 27, 2010.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's judgment is **AFFIRMED** in its entirety.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 30th day of July, 2010.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge